UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**03 - 1 0 8 9 5 DPW**

|  |  |
|---|---|
| ALANNA L. CURRY,<br>MARLENE L. BRENES,<br>and THOMAS O. WHITE<br><br>individually and on behalf of all others<br>similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FAIRBANKS CAPITAL CORPORATION<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

RECEIPT # __47356__
AMOUNT $ _150_
SUMMONS ISSUED _NOD_
LOCAL RULE 4.1 ___
WAIVER FORM __1__
MCF ISSUED___
BY DPTY. CLK. _TOM_
DATE _5-16-03_

MAGISTRATE JUDGE _Collings_

## CLASS ACTION COMPLAINT

### I. Introduction

1. This class action seeks relief for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter "FDCPA"), breach of contract, and misrepresentation, together with equitable relief for unjust enrichment. Defendant routinely seeks to collect and does collect fees, costs, and other foreclosure related charges that are not legally due. The illegal fees, costs, and charges are demanded in the context of reinstatement agreements, reinstatement demand letters, and loan payoff demands. The charges are then paid by borrowers who are desperate to prevent loss of their family home.

2. In addition, the Defendant routinely enters into and then breaches reinstatement agreements with borrowers who seek to save their homes. The purpose of the reinstatement agreements is to lock in substantial unlawful charges. When the Defendant subsequently breaches the reinstatement agreements, it resumes foreclosure activity without notice to the

homeowners. The Defendant then collects its unlawful charges in the foreclosure process from the borrowers' equity in their homes.

3.      All of the collection activities at issue in this case are prohibited by the FDCPA. Plaintiffs and the class they seek to represent also demand relief for breach of contract, misrepresentation, and unjust enrichment.

4.      The unlawful fees and charges demanded by the Defendant increase the amounts that financially strapped homeowners must raise to reinstate or payoff their mortgages and thereby avoid foreclosure. Defendant's unlawful practices thereby exacerbate mortgage defaults. Because many homeowners cannot raise the necessary funds, the Defendant's practices contribute to the avoidable loss of consumers' homes.

## II. Jurisdiction

5.      Jurisdiction arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337(a), together with the pendent jurisdiction of the Court. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## III. Parties

6.      Plaintiff, Alanna L. Curry, is an individual homeowner who resides at 32 Devon Street, Dorchester, MA.

7.      Plaintiffs, Marlene L. Brenes and Thomas O. White, are individuals who reside at 138 Fremont Ave., Everett, MA. Until foreclosure by Defendant in March, 2003, Ms. Brenes and Mr. White owned their residence at 125 Grandview Avenue, Revere Massachusetts 02151.

8.      Defendant, Fairbanks Capital Corporation ("Fairbanks") is a Utah based corporation, with a principal place of business at 3815 South West Temple Street, Salt Lake City, Utah, 84115.

2

9.      Fairbanks regularly attempts to collect debts alleged to be due another and is a debt collector as defined by 15 U.S.C. § 1692a(6).

## IV. Facts

### *Alanna L. Curry*

10.     Ms. Curry is an unsophisticated consumer with little or no experience concerning mortgage accounting.

11.     On or about September 6, 1996, Ms. Curry and an entity known as Parkway Mortgage entered into a loan note in the amount of $60,000. The annual percentage rate on the note was 15.75%. The required monthly payments were $744.30.

12.     The debt was incurred by Ms. Curry for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

13.     Said note was secured by a mortgage on Ms. Curry's residential real estate.

14.     A true and correct copy of said note is attached hereto and labeled Exhibit A.

15.     Said note provides for payment of the note holder's costs and expenses to the extent "not prohibited by applicable law." See Exhibit A, ¶ 6(E).

16.     Said note was assigned to various entities and was most recently held by an entity known as Manufacturers & Traders Trust Company as trustee for Securitization Series 1996-4 (the "Note Holder").

17.     At all times relevant to this complaint, Fairbanks is and has been collecting the debt from Ms. Curry on behalf of the Note Holder.

18.     The debt was in default at the time Fairbanks commenced collecting or attempting to collect on behalf of the Note Holder or the Note Holder's assignors.

19.     On or about March 21, 2003, Fairbanks sent Ms. Curry a "Payoff Quote" asserting that full payment of the debt required payment, *inter alia*, of the following amounts:

"Escrow/Impound Overdraft"............................................................$8,173.73

"Unpaid Other Fees" ......................................................................$4,318.69

3

"Funds Advanced on Borrowers Behalf"...........................................$3,966.50

"Estimated Legal Fees" ...............................................................$4,888.18

"Recording Fee" ........................................................................$   30.00

"Payoff Statement Fee" .............................................................$   50.00

"Fax Fee".................................................................................$   10.00

"Interest on Advances"...............................................................$  153.68

20.    A true and correct copy of the "Payoff Quote" from Fairbanks to Ms. Curry dated March 21, 2003, is attached hereto and labeled Exhibit B ("the first payoff quote"). The total amount claimed due is $93,064.17.

21.    The first payoff quote indicated that it would be in effect through April 13, 2003.

22.    Some or all of the fees and charges enumerated in paragraph 19 were not due from Ms. Curry at the time of the first payoff quote. On information and belief, Fairbanks has no records supporting its entitlement to some or all of said fees and charges.

23.    The first payoff quote constituted an attempt by Fairbanks to collect fees and charges that were not legally due and owing.

24.    On or about April 5, 2003, Fairbanks sent Ms. Curry a "Payoff Quote" asserting that full payment of the  debt required payment, *inter alia*, of  the following amounts:

"Escrow/Impound Overdraft"..........................................................$8,233.72

"Unpaid Other Fees" ....................................................................$4,542.91

"Funds Advanced on Borrowers Behalf"...........................................$3,966.50

"Estimated Legal Fees" ...............................................................$5,283.18

"Recording Fee" ........................................................................$   30.00

"Property Inspection" ..................................................................$    9.60

"Interest on Advances".................................................................$   49.82

25.    A true and correct copy of the "Payoff Quote" from Fairbanks to Ms. Curry dated April 5, 2003, is attached hereto and labeled Exhibit C ("the second payoff quote"). The total amount claimed due is $93,599.43.

4

26.     Like the first payoff quote, the second payoff quote indicated that it would be in effect through April 13, 2003. Nevertheless it is impossible to reconcile the first payoff quote and the second payoff quote.

27.     Some or all of the fees and charges enumerated in paragraph 24 were not due from Ms. Curry at the time of the second payoff quote. On information and belief, Fairbanks has no records supporting its entitlement to some or all of said fees and charges.

28.     The second payoff quote constituted an attempt by Fairbanks to collect fees and charges that were not legally due and owing.

29.     On or about April 9, 2003, Fairbanks, by and through its attorneys, sent Ms. Curry "payoff figures" asserting that full payment of the debt required payment, *inter alia*, of the following amounts:

"Escrow/Impound Overdraft"............................................................$8,233.72

"Legal Fees and Costs" ...................................................................$9,715.66

"Recording Fee" .............................................................................$   30.00

"Property Inspection" .....................................................................$   66.35

"BPO/Appraisal"............................................................................$   310.00

30.     A true and correct copy of the "payoff figures" from Fairbanks, sent by Fairbanks attorney's (Harmon Law Offices, P.C.) to Ms. Curry dated April 9, 2002, is attached hereto and labeled Exhibit D ("the Attorney letter"). The total amount claimed due is $88,768.62.

31.     The Attorney letter indicated that the payoff quote it contained would be in effect through April 14, 2003 at 1:00 P.M.

32.     It is impossible to reconcile the Attorney letter with the first payoff quote or the second payoff quote.

33.     Some or all of the fees and charges enumerated in paragraph 29 were not due from Ms. Curry at the time of the Attorney letter. On information and belief, Fairbanks has no records supporting its entitlement to some or all of said fees and charges.

34.   The Attorney letter constituted an attempt by Fairbanks to collect fees and charges that were not legally due and owing.

35.   Fairbanks failed to state "the amount of the debt" as required by 15 U.S.C. § 1692g(a)(1).

36.   On April 7, 2003, Ms. Curry entered into a loan to refinance the mortgage being serviced by Fairbanks at the substantially lower interest rate of 7% (the refinance loan).

37.   The refinance loan was with Wells Fargo Home Mortgage Inc ("Wells Fargo").

38.   Although Ms. Curry did not agree that Fairbanks' various pay-off quotes and pay-off figures were accurate, she authorized Wells Fargo to pay Fairbanks a total of $93,670.89 to satisfy its demands.

39.   Ms. Curry made such payment under duress, without the advice of counsel, and to obtain the benefit of a substantially lower interest rate from Wells Fargo.  Had she not authorized the payoff to Fairbanks, Wells Fargo would not have closed its loan to Ms. Curry because it could not have obtained a first lien on Ms. Curry's residence.

40.   Fairbanks received full payment on or about April 11, 2003, but in no event later than April 13, 2003.

41.   The amount Ms. Curry paid was higher than the highest of Fairbanks' several payoff demands.

42.   On information and belief Fairbanks retained the unlawful fees and charges rather than paying them to the Note Holder.

43.   Ms. Curry was further injured by Fairbanks' conduct because she is paying interest to Wells Fargo on the excess amounts that she repaid Fairbanks.

44.   Fairbanks regularly collects or attempts to collect fees, costs, and charges from homeowners in excess of the amount owed by demanding such fees in payoff quotes and payoff letters such as the ones attached as Exhibits B, C and D.

**Marlene L. Brenes and Thomas O. White**

45.     Ms. Brenes and Mr. White are unsophisticated consumers with little or no experience concerning mortgage accounting.

46.     Until foreclosure by Defendant in March, 2003, Ms. Brenes and Mr. White owned their residence at 125 Grandview Avenue, Revere Massachusetts (the "residence").

47.     Ms. Brenes and Mr. White paid $155,000 for the residence in September, 1999. At the time of foreclosure by Fairbanks, the residence was valued at $255,000 due to substantial improvements paid for by Ms. Brenes and Mr. White together with their sweat equity.

48.     In order to purchase the property, Ms. Brenes and Mr. White borrowed from a lender known as Equicredit Corporation.

49.     The debt was incurred by Ms. Brenes and Mr. White for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

50.     Due to financial problems beyond their control, Ms. Brenes and Mr. White fell several months behind on their payments.

51.     Fairbanks acquired the debt from Equicredit Corporation at a time when said debt was in default or at a time when Fairbanks and/or Equicredit asserted that the debt was in default.

52.     Fairbanks commenced foreclosure during 2002.

53.     After learning that Fairbanks was commencing foreclosure, Ms. Brenes contacted Fairbanks to determine if she could resolve the default by making up the missed monthly mortgage payments. At the time of her contact with Fairbanks, Ms. Brenes believed that she was only two or three monthly payments behind.

54.     In response, on or about June 13, 2002, Fairbanks sent Ms. Brenes a written "forbearance agreement".

55.     Ms. Brenes and Mr. White did not believe that the amount that Fairbanks claimed due was accurate, but signed the agreement, under duress and without the advice of counsel, in order to prevent foreclosure of their home.

7

56.     A true and correct copy of the forbearance agreement is attached as <u>Exhibit E</u> (the "forbearance agreement").

57.     The forbearance agreement required repayment of the following amounts:

"Total Monthly Delinquent Payments"...........................................$7,319.15

"Late Fees"......................................................................................$  658.65

"Other"...........................................................................................$    78.79

"Escrow Advance".........................................................................$2,794.00

"Legal Fees" ..................................................................................$2,519.80

"Recoverable Corp." .....................................................................$    48.50

"Suspense".....................................................................................($  688.00)

58.     In the forbearance agreement, the total amount claimed due to reinstate is $12,730.89 as of June 14, 2002.

59.     Some or all of the payments, fees, and charges enumerated in paragraph 57 were not due from Ms. Brenes and Mr. White at the time of the forbearance agreement.   On information and belief, Fairbanks has no records supporting its entitlement to some or all of said payments, fees and charges.

60.     The forbearance agreement constituted an attempt by Fairbanks to collect payments, fees, and charges that were not legally due and owing.

61.     Fairbanks failed to state "the amount of the debt" as required by 15 U.S.C. § 1692g(a)(1).

62.     Under the forbearance agreement, Ms. Brenes and Mr. White agreed to make payments of $1,600 per month for 17 months in order to resolve the default.  Each payment was due on the 14th of the month.

63.     Ms. Brenes and Mr. White made all of the payments required by the forbearance agreement as they came due.  Although a few of the payments were late, each time they sent a late payment, Ms. Brenes called Fairbanks and obtained oral permission to send the payment

after its due date. Each payment was made and accepted by Fairbanks before the end of the month in which it was due.

64.    Despite accepting payments under the forbearance agreement, Fairbanks resumed the foreclosure process by sending a notice of foreclosure sale by certified mail to the residence in February, 2003.

65.    Ms. Brenes and Mr. White did not receive notice of the certified letter from the post office and were not aware of the existence of that notice.

66.    On or about March 27, 2003, Fairbanks conducted a foreclosure sale of the residence, at which sale the residence was sold to a third party.

67.    Ms. Brenes and Mr. White had no prior notice that the sale would be held. Indeed, they had no idea that a sale of their property would be scheduled during a period in which Fairbanks was accepting payments under the forbearance agreement. They did not learn of the sale until after it was conducted.

68.    On information and belief, the sale price at foreclosure was more than the total amount of the debt owed.   Fairbanks was fully paid from the proceeds of the foreclosure sale, including all unlawful fees and charges.

69.    Fairbanks has failed to account to Ms. Brenes and Mr. White for the excess proceeds of the foreclosure sale.

70.    Fairbanks retained the unlawful fees and charges together with the excess proceeds of the foreclosure sale rather than paying them to a third party.

71.    In addition to losing their residence, Ms. Brenes and Mr. White were hurt by the sale because they lost approximately $100,000 in home equity – representing their only significant financial resource.

72.    Fairbanks regularly collects or attempts to collect fees, costs, and charges from homeowners in excess of the amount owed by demanding such fees in reinstatement agreements such as the one attached as Exhibit E.

9

73.     Fairbanks regularly fails to honor the terms of reinstatement agreements by continuing to foreclose while accepting payments under the agreement.

## CLASS ALLEGATIONS

74.     The plaintiffs bring this action on behalf of three classes of all other persons similarly situated.

75.     The first class, the "FDCPA class", is represented by all plaintiffs and consists of all persons who satisfy the following criteria:

> (i) Individuals whose alleged debts Fairbanks obtained after default, whether as servicer or holder;
>
> (ii) to whom Fairbanks sent a written communication which included a claim for charges that were not then legally due and owing or for which Fairbanks has no records;
>
> (iii) in an attempt to collect a debt incurred for personal, family, or household purposes;
>
> (iv) during the one-year period prior to the filing of the complaint in this action.

76.     The second class, the "reinstatement agreement class", is represented by Marlene Brenes and Thomas White and consists of all persons who satisfy the following criteria:

> (i) Individuals who entered into a reinstatement agreement with Fairbanks;
>
> (ii) whose reinstatement agreements were not honored by Fairbanks even though the individual was making and Fairbanks was accepting payments required by the agreement;
>
> (iii) during the six-year period prior to the filing of the complaint in this action.

77.     The third class, the "common law class" is represented by all plaintiffs and consists of all persons who satisfy the following criteria:

(i) Individuals who paid fees or charges to Fairbanks that were not legally due and owing;

(ii) after a demand by Fairbanks for such fees;

(iii) during the three-year period prior to the filing of the complaint in this action.

78.     On information and belief, each class is sufficiently numerous that joinder of all members is impractical.

79.     There are questions of law and fact common to each class, which common issues predominate over any issues peculiar to individual class members. The principal common questions include:

a.     Whether Fairbanks' collection notices seek to collect fees and charges that are not legally due and owing.

b.     Whether Fairbanks' collection notices including, without limitation, payoff demands and reinstatement demands, falsely represent the nature, character or amount of the debt;

c.     Whether Fairbanks' communications to class members fail to state "the amount of the debt" as required by 15 U.S.C. § 1692g(a)(1).

d.     Whether Fairbanks breaches its reinstatement agreements with customers;

e.     Whether Fairbanks has intentionally misrepresented the amount of debts owed by homeowners to it; and

f.     Whether Fairbanks' has collected amounts that are not due and owing under relevant law and contracts.

80.     The plaintiffs have the same claims as the members of each class. All of the claims are based on the same factual and legal theories.

81.     The plaintiffs will fairly and adequately represent the interest of the class members. The plaintiffs have retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why the plaintiffs and their counsel will not vigorously pursue this matter.

82.     Certification of these classes pursuant to Fed. R. Civ. P. 23(b)(3) is appropriate. A class action is the only appropriate means of resolving this controversy because the class members are not aware of their rights. In the absence of a class action, a failure of justice will result.

83.     Certification of these classes under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Fairbanks has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

## Count I:  Violations of the FDCPA

84.     Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

85.     Fairbanks violated the FDCPA by the following conduct:

   a.     attempting to collect amounts not permitted by law (15 U.S.C. § 1692f(1));

   b.     using unfair and unconscionable collection methods (15 U.S.C. § 1692f);

   c.     giving a false impression of the character, amount, or legal status of the alleged debt (15 U.S.C. § 1692e(2));

   d.     using false or deceptive collection methods (15 U.S.C. § 1692e(5)); and

   e.     failing to state "the amount of the debt" as required by 15 U.S.C. § 1692g(a)(1).

86.     Plaintiffs and members of the FDCPA class are entitled to relief under the FDCPA, including damages and a declaratory judgment that Fairbanks' conduct violates the FDCPA.

## Count II: Breach of Contract for Members of the Reinstatement Agreement Class

87.     Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

88.     Fairbanks entered into valid reinstatement agreements with plaintiffs Brenes and White as well as other individuals seeking to cure their loan defaults and to save their homes.

89.     Fairbanks then failed to honor those agreements by continuing the foreclosure process while the consumers were making payments under the agreements.

90.     Fairbanks has breached its contracts with the plaintiffs and members of the reinstatement agreement class.

91.     Plaintiffs Brenes and White and members of the reinstatement agreement class are entitled to relief for breach of contract.

## Count III: Breach of Contract for Members of the Common Law Class

92.     Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

93.     Fairbanks has collected amounts that are not due and owing by contract or under applicable law.

94.     Fairbanks has breached its contract with the plaintiffs and members of the common law class.

95.     Plaintiffs and members of the common law class are entitled to relief for breach of contract.

## Count IV:  Intentional Misrepresentation for Members of the Common Law Class

96.     Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

97.     Fairbanks has represented to the plaintiffs that Fairbanks is entitled to collect various loan charges that were not legally due and owing.

98.     Fairbanks' representations concerning the right to collect such fees and charges were false.

99.     Fairbanks knew or should have known that such representations were false.

13

100.  Plaintiffs relied on Fairbanks' false representations concerning its entitlement to collect such fees and charges and plaintiffs did pay such fees and charges to their detriment.

101.  Plaintiffs reliance was reasonable or justifiable in the circumstances.

102.  Plaintiffs have suffered damages.

103.  Plaintiffs and members of the common law class are entitled to relief for misrepresentation.


## Count V:  Unjust Enrichment

104.  Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

105.  Fairbanks' has engaged in unlawful collection activities.

106.  Fairbanks has collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit Fairbanks to collect such fees and charges.

107.  Fairbanks has been unjustly enriched by its conduct.

108.  Plaintiffs have suffered loss by virtue of Fairbanks' conduct.

109.  Plaintiffs and members of the common law class are entitled to relief for unjust enrichment.


WHEREFORE, plaintiffs request that the Court order the following relief in their favor and on behalf of each applicable class and against Defendant Fairbanks:

a.  actual and statutory damages pursuant to 15 U.S.C. §1692k(2)(B);

b.  actual damages for breach of contract and misrepresentation;

c.  declaratory judgment that Fairbanks' conduct violates the FDCPA and state law;

d.  restitution based on Fairbanks' unjust enrichment;

e.  disgorgement of Fairbanks' unjustly obtained funds;

f.  an award of attorney's fees, litigation expenses and costs pursuant to 15 U.S.C. § 1692k(3) or under other applicable law; and

g.  such other and further relief as is appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury.

Respectfully Submitted,

Dated this 16th day of May 2003.

Gary Klein
BBO # 560769
John Roddy
BBO # 424240
Grant & Roddy
44 School Street, Suite 400
Boston, MA  02108
Tel. 617- 248-8700
Fax. 617- 248-0720

Stuart Rossman
BBO # 430640
John Rao
National Consumer Law Center
77 Summer Street, 10th Floor
Boston, MA  02110
(617) 542-8010

15

**EXHIBIT A**

# BALLOON NOTE
(Fixed Rate)

Loan NO. 15961203

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

SEPTEMBER 6 , 19 96        RANDOLPH        , MA

[City]                                    [State]

32 DEVON STREET
DORCHESTER, MA 02121

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   60,000.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
PARKWAY MORTGAGE, INC.,
IT'S SUCESSORS AND/OR ASSIGNS
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of        14.700 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the    11TH    day of each month beginning on OCTOBER 11    ,19 96 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on SEPTEMBER 11    2011 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date".

I will make my monthly payments at
1700 GALLOPING HILL ROAD, KENILWORTH, NJ 07033

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $        744.30 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        3.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

MULTISTATE BALLOON FIXED RATE NOTE - Single Family - FNMA UNIFORM INSTRUMENT
Laser Forms Inc. (800) 446-3555                                Page 1 of 2        Initials: _____

Form 3260 3/87
LIFT #3260 10/91

Even if time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| ALANNA L. CURRY _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| Social Security Number 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 | Social Security Number_____ |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| Social Security Number _____ | Social Security Number_____ |

PAY TO THE ORDER OF _____

[Sign Original Only]

WITHOUT RECOURSE, BY _____

PARKWAY MORTGAGE, INC.

## BALLOON PAYMENT RIDER TO NOTE AND SECURITY INSTRUMENT

The BALLOON PAYMENT RIDER ("Rider") is made this _6TH_ day of _SEPTEMBER_, 1996, and amends a Note in the amount of $ _60000_ (the "Note") made by the person(s) who sign below ("Borrower") to _PARKWAY MORTGAGE, INC._ ("Lender").

*"THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER."*

At least ninety (90) but not more than one hundred twenty (120) days prior is the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the "balloon payment" (which is the entire unpaid principal balance of loan and interest then due) which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the Maturity Date are made on time).

_____     _____ (Seal)
       Witness                        Borrower

_____     _____ (Seal)
       Witness                        Borrower

_____     _____ (Seal)
       Witness                        Borrower

_____     _____ (Seal)
       Witness                        Borrower

BALLRIDE.DOC 03/96

RIDER TO NOTE, DATED SEPTEMBER 6, 1996, between PARKWAY MORTGAGE, INC., as Lender, and ALANNA L. CURRY   as Borrower(s).  To the extent any portion of this Rider shall conflict with any portion of the Note, the provisions of this Rider shall control.

The following language is hereby deleted from paragraph (4) of the Note:

"I may make a full prepayment or partial prepayments without paying any prepayment charge."

The following language is hereby added to paragraph (4) of the Note:

"If I make a full prepayment or a partial prepayment, I will not have to pay a prepayment penalty on or after September 6, 1997.  If I make a full prepayment or partial prepayment at any time before September 6, 1997, I will have to pay a prepayment penalty in an amount  equal to 3 % of the amount of each such prepayment, which penalty will be due at the time of each such prepayment."

**"DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN.  UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT."**

ALANNA L. CURRY

NYRIDERN.DOC 01/96

**B**

*EXHIBIT B*

MAR 31 2003 17:51 FR                          9044575154 TO     17625859898  P.01/05

# Fairbanks Capital Corp.

## PAYOFF QUOTE
### March 21, 2003

Loan No: 2028625552
Borrower(s): Alanna Curry

Quote Requested By:
Christos Tsiotos Atty
(617)625-8590

Next Payment Due Date: 11/11/2001
Property Address: 32 Devon St
Dorchester, Ma 02121

| | |
|---|---:|
| Principal Balance | $ 59,164.88 |
| Interest Accrued To 04/13/2003 | $ 13,093.52 |
| (per day interest is $23.83) | |
| Escrow/Impound Overdraft | $ 8,173.73 |
| Suspense Balance | ($ 900.00) |
| Unpaid NSF Charges | $ 14.99 |
| Unpaid Other Fees | $ 4,318.69 |
| Funds Advanced on Borrower's Behalf | $ 3,966.50 |
| Recording Fee | $ 30.00 |
| Estimated Legal Fees | $ 4,888.18 |
| Payoff Statement Fee | $ 50.00 |
| Fax Fee | $ 10.00 |
| Interest on Advances | $ 153.68 |
| *TOTAL AMOUNT TO PAY LOAN IN FULL ON OR BEFORE 04/13/2003 | $ 93,064.17 |

* The closing agent is required to hold back one monthly payment in the amount of $758.71 for 30 days.
* Funds applied within 30 days of the Payoff application can not be treated as 'good funds' until enough time has elapsed for NSF determination.
* This payoff quote is for information purposes only. These figures are subject to final verification by the Noteholder.
* This payoff quote expires and is void after 04/13/2003. You must obtain an updated WRITTEN quote from us if you want to pay off your loan after 04/13/2003. Please allow up to 5 business days for us to provide you with an updated statement (unless a shorter timeframe is required by state law).
* Do not cancel or stop payment on any of your regularly scheduled monthly payments. You must continue to make your monthly mortgage payments when due up until the time your loan is paid in full. We may assess a late charge if you fail to make your regularly scheduled monthly mortgage payment.
* If the last regular monthly payment you sent to us is returned for insufficient funds, is dishonored due to a stop payment order, or that payment is not made for any other reason, your payoff figure will need to be increased.
* To the extent applicable, additional legal fees or costs associated with the servicing of your loan may accrue daily. Interest also continues to accrue until you fully pay off your loan.
* A satisfaction/release of your mortgage will not be made until we receive all funds you owe under the terms of your loan documents, unless applicable law requires otherwise.
* We may reject any payment that is less than full payment unless you direct us to apply that payment as a principal prepayment that is not intended to pay off your loan.
* We reserve the right to collect additional amounts should the amounts shown on this statement be inaccurate or incomplete.
* Please call (888)349-8952 to verify these payoff figures no later than 24 hours prior to your closing. In the event your loan is in default, allow additional time for verification of additional fees and costs associated with servicing your loan.

*Thru 4/15 – 93,111.⁸³*

3815 South West Temple • Salt Lake City, Utah 84115-4412
P.O. Box 65250 • Salt Lake City, Utah 84165-0250

Batch:03/21/2003 02:23:42 PM

C

*EXHIBIT C*

Loan Servicing-UT    4/17/2003 8:06  PAGE  3/3  Rig Fax

# Fairbanks Capital Corp.

* PLEASE SEE
PAYOFF INSTRUCTIONS
ATTACHED TO THIS QUOTE

PAYOFF QUOTE
April 05, 2003

Loan No:2028625552
Borrower(s):Alanna Curry

Quote Requested By:
Christos Tsiolos Atty
(617)625-8590
This Quote Supersedes Quote
Dated 3/21/03

Next Payment Due Date:12/11/2001
Property Address:32 Devon St.
Dorchester, Ma 02121

| | | |
|---|---|---|
| | $ | 59,145.35 |
| Principal Balance | $ | 12,364.65 |
| Interest Accrued To 04/13/2003 | | |
| (per day interest is $23.82) | $ | 8,233.72 |
| Escrow/Impound Overdraft | ($ | 41.29) |
| Suspense Balance | $ | 14.99 |
| Unpaid NSF Charges | $ | 4,542.91 |
| Unpaid Other Fees | $ | 3,966.30 |
| Funds Advanced on Borrower's Behalf | $ | 30.00 |
| Recording Fee | $ | 5,283.18 |
| Estimated Legal Fees | $ | 9.60 |
| Property Inspection | $ | 49.82 |
| Interest on Advances | $ | 93,599.43 |

*TOTAL AMOUNT TO PAY LOAN IN FULL ON OR BEFORE 04/13/2003

* **The closing agent is required to hold back one monthly payment in the amount of $758.71 for 30 days.**
*Funds applied within 30 days of the Payoff application can not be treated as 'good funds' until enough time has elapsed for NSF determination.
* This payoff quote is for information purposes only.  These figures are subject to final verification by the Noteholder.
* This payoff quote expires and is void after 04/13/2003.  You must obtain an updated WRITTEN quote from us if you want to pay off your loan after 04/13/2003.  Please allow up to 5 business days for us to provide you with an updated statement (unless a shorter timeframe is required by state law).
* Do not cancel or stop payment on any of your regularly scheduled monthly payments.  You must continue to make your monthly mortgage payments when due up until the time your loan is paid in full.  We may assess a late charge if you fail to make your regularly scheduled monthly mortgage payment.
* If the last regular monthly payment you sent to us is returned for insufficient funds, is dishonored due to a stop payment order, or that payment is not made for any other reason, your payoff figure will need to be increased.
* To the extent applicable, additional legal fees or costs associated with the servicing of your loan may accrue daily. Interest also continues to accrue until you fully pay off your loan.
* A satisfaction/release of your mortgage will not be made until we receive all funds you owe under the terms of your loan documents, unless applicable law requires otherwise.
* We may reject any payment that is less than full payment unless you direct us to apply that payment as a principal prepayment that is not intended to pay off your loan.
* We reserve the right to collect additional amounts should the amounts shown on this statement be inaccurate or incomplete.
* Please call (888)349-8952 to verify these payoff figures no later than 24 hours prior to your closing.  In the event your loan is in default, allow additional time for verification of additional fees and costs associated with servicing your loan.

3815 South West Temple * Salt Lake City, Utah 84115-4412
P.O. Box 65250 * Salt Lake City, Utah 84165-0250

Batch:04/05/2003 01:14:12 PM

D

*EXHIBIT D*

HARMON LAW OFFICES, P.C.
150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458

MAILING ADDRESS:
P.O. BOX 610389
NEWTON HIGHLANDS, MA 02461-0389

TEL (617) 558-0500
FAX (617) 244-7304

SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND

*Loan 4-7 closed*

April 9, 2003

Alanna L. Curry
32 Devon Street
Dorchester (Boston), MA 02121

Re:   Manufacturers & Traders Trust Company, Trustee for Securitization Series 1995-4, Agreement dated 12-01-95/Curry, Alanna
Loan No.2029625552
Property Address    32 Devon Street, Dorchester (Boston), Massachusetts

Dear Alanna L. Curry:
In response to your request, our client has provided us with the following payoff figures:

| | |
|---|---|
| Principal Balance | $ 59,145.35 |
| Interest to 4/14/03 | $ 12,366.47 |
| Escrow Advance Balance | $ 5,233.72 |
| Property Inspections | $ 66.35 |
| NSF Fee | $ 14.99 |
| Payment Shortage | $ 0.70 |
| Recording Fee | $ 30.00 |
| BPO/Appraisal | $ 310.00 |
| Suspense Balance | $ (41.29) |
| Miscellaneous Credit | $ (1,096.33) |
| Legal Fees and Costs | $ 9,715.66* |
| TOTAL DUE | $ 28,768.62 |

* The quoted legal fees and costs are estimated through the date you have requested. If you contact this office immediately prior to the time you intend to mail or deliver the funds, we will provide you with the actual legal fees and costs at that time.

The payoff figures are calculated through and expire on April 14, 2003 at 1:00 p.m.
Please be advised that the figures quoted above are subject to final verification by the Noteholder. Issuance of this statement does not suspend the payment of taxes, insurance or other miscellaneous expenses, including legal fees and costs. Please make your certified check, bank check or money order payable to HARMON LAW OFFICES, P.C. and mail the check directly to HARMON LAW OFFICES, P.C., 150 California Street, Newton, MA 02458 so that we receive it no later than 1:00 P.M. on April 14, 2003. Personal checks will not be accepted.

Very truly yours,
HARMON LAW OFFICES, P.C.

Thomas J. Santolucito, Esquire
CGS/FEG/200003-0361
PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION   OBTAINED   WILL   BE   USED   FOR   THAT   PURPOSE.

TOTAL P.02

**E**

*EXHIBIT E*

# FORBEARANCE AGREEMENT

**Loan Number: 0002533487**

THIS FORBEARANCE AGREEMENT (the "Agreement") is made and entered into June 10, 2002 by and among Fairbanks Capital Corp. a Utah corporation (the "Lender") and THOMAS WHITE & MARLENE BRENES (the "Borrower(s)").

## RECITALS

Whereas the Lender is the holder of that certain promissory note dated 08/23/1999 in the original principal amount of $ $147,250.00 (hereinafter the Note); and

Whereas the Borrower(s) is the owner of the property located at 125 GRAND VIEW AVE REVERE, MA 02151 (hereinafter the "Property") upon which Fairbanks Capital Corp. is holder of a Mortgage securing the Note; and

Whereas Lender has acquired all right, title and interest in and to the Note and is the beneficiary of the interest created by the Mortgage and

Whereas the Note is delinquent and judicial foreclosure has been commenced pursuant to that certain Notice of Intention to foreclose.

Whereas Borrower(s) has requested that Lender forebear from pursuing the foreclosure proceedings described immediately above, except that Lender may enter Final Judgement in said proceedings, and that the Note may be modified as set forth below, and

Whereas Borrower(s) and Lender are willing to modify the note as set forth below in order to permit Borrower(s) to continue to owe and to use the property. Now therefore the premises considered, for good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, Borrower(s) and Lender agree as follows:

1.  **Status of Loan.** As of June 10, 2002 the status of the loan evidenced by the Note and Mortgage (hereinafter the Loan) is as follows:

    a.  Principal balance: $145,822.81
    b.  Total monthly delinquent payments: $7,319.15
    c.  NSF fees: $0
    d.  Late fees: $658.65
    e.  Other: $378.79
    f.  Escrow advance: $2,794.00
    g.  Legal fees: $2,519.80
    h.  Recoverable Corp: $48.50
    i.  Suspense: $688.00
    j.  Amount necessary to reinstate as of June 14, 2002 is $12,730.89

2.  **Forbearance.** From and after the date of execution of this Agreement, during the term hereof, so long as Borrower(s) does not default in any performance required by this Agreement and does not default in any performance required by the Note (except as modified by this Agreement) and Mortgage Lender agrees to forbear from scheduling a sheriffs sale, and to forbear from proceeding with the filing of a Foreclosure.

3.  **Duties of Borrower(s).** Borrower(s) shall make the following payments at the following times:

    A)  On or before the earlier of June 14, 2002 or the date of execution of this agreement, Borrower(s) shall pay $3,688.00 to Lender.

B)  Thereafter Borrower(s) shall make monthly payments to Lender in the amount of $1,600.00 for the months of July 2002 through and including November 2002 provided that payments shall be received by Lender no later than the 14th day of each of these months.

4.  **Effect of Default.**  Should Borrower(s) fail to make any payment required by this Agreement or perform any other act required by this Agreement or should any representation or warranty given by Borrower(s) be untrue or shall be breached, Lender shall have the right to pursue all remedies available to it under the Note, Mortgage and /or Final Judgment. In executing this agreement, Borrower(s) specifically acknowledges that the Notice of Default shall not be rescinded and shall be an instrument of record until withdrawn by Lender.

5.  **Borrowerer(s)'s Representation and Warranties.**  To induce Lender to forebear from enforcing its rights under the Note, Mortgage and/or Final Judgment, Borrower(s) makes the following representations, warranties and covenants:

   a)  The amount set forth in Section 1, hereof are accurate and Borrower(s) acknowledges that he is in default under the terms of the Note and Mortgage and in executing this Agreement is seeking to preserve his rights as owner of the property; and

   b)  Borrower(s) has no claim, offset, counterclaim or other basis for disputing the amounts due and owing described in Section 1, of this Agreement; and

   c)  Borrower(s) has no other claim cause of action or other basis for asserting any charge against Lender whether arising out of the Loan or any other relationship between Borrower(s) and Lender, and

   d)  Borrower(s) hereby confirms that this Agreement, the Note (except as modified by this Agreement), the Mortgage and any other documents or instruments evidencing the Loan are fully enforceable in accordance with their terms; and

   e)  Borrower(s) has full authority to execute and deliver this Agreement; and

   f)  Prior to execution of this Agreement, Borrower(s) has received is, has sought the advice of such attorneys or other experts as Borrower(s) desire appropriate, and Borrower(s) is aware of the requirements contained in this Agreement and understands the performance required of Borrower(s) by this Agreement; and

   g)  The execution and delivery of this Agreement shall not constitute a waiver or release of Borrower(s) with respect to any promise, covenant or representation contained in this Agreement, the Note (except as modified by this Agreement) or the Mortgage; and

   h)  Borrower(s) has not been coerced, threatened or otherwise induced to execute this Agreement except by the consideration furnished by the Lender as set forth herein; and

   i)  Borrower(s) acknowledges that the Lender is entering into this Agreement in reliance upon the representations, covenants and warranties made by Borrower(s).

6.  **Release by Borrower(s).**  Borrower(s) hereby waives, releases, disclaims, denounces and acquits any claim, charge, counterclaim, chose in action or other basis for asserting any defense, offset or requirements of this Agreement, the Note or the Mortgage which Borrower(s) may have against Lender whether at law or in equity and covenants hereby that Borrower(s) shall not initiate any action or assert any defense seeking to defeat Lender or offset any amount required to be paid by the Borrower(s) pursuant to this Agreement or the Note.

7.  **Effect of Release by Borrower(s).**  Borrower(s) acknowledge that if any facts concerning the claims released by this Agreement should be found hereafter to be other than or different from the facts now believed to be true, Borrower(s) expressly accept and assume the risk of such possible difference in facts and agree that the releases in this Agreement will remain effective as long as Lender is not otherwise in breach hereof.

For the purpose of the foregoing, "Creditor" refers to "Lender" and "Debtor" refers to "Borrower(s)". The releases contained herein shall apply to Lender, its officers, employees, directors, agents, advisors, consultants or other representing Lender with respect to subject matter hereof.

8. **Effect of Agreement.** Except as specifically modified by this Agreement, all other terms of the Note shall remain unchanged from the original terms and no part of the Mortgage is modified by this Agreement.

9. **Further Assurances.** Borrower(s) shall take such actions and execute and deliver such other instruments in form and substance satisfactory to Lender as Lender may reasonably require to protect and preserve Lender's rights under this Agreement, the Note or the Mortgage.

10. **Indemnification.** Borrower(s) agrees to indemnify Lender and its directors, officers, employees, agents, consultants and advisors from and against any liability, claim, cost or expense (including attorney fees, court costs and other expenses) arising out of or in connection with the execution of this Agreement or the performance of any act required by this Agreement, any default by Borrower(s) under this Agreement or any misrepresentation or breach of covenant or warranty by Borrower(s) whether pursuant to this Agreement or the Note or Mortgage.

11. **General.** This Agreement shall be construed in accordance with laws of the State of MA. This Agreement may be signed in one or more counterparts, each of which, when taken together with all other counterparts shall constitute one single, binding and integrated agreement. Except as described herein there are no other agreements by and between Borrower(s) and Lender with respect to the subject matter hereof. For the purposes of this Agreement, section headings are for convenience only and are not to be used in construing this Agreement. When context so requires, reference to any specific gender shall include all other genders and the singular verb tense.

LENDER:
Fairbanks Capital Corp.

By: _____
Loss Mitigation Supervisor

BORROWER(S):

_____   6-13-02
THOMAS WHITE              Date

_____   6-13-02
MARLENE BRENES           Date

SUBSCRIBED AND SWORN to
before me on this _____ day of
_____ 20__

_____
Notary Public