# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br><br>v.<br><br>FAIRBANKS CAPITAL CORP. and<br>FAIRBANKS CAPITAL HOLDING CORP.,<br>　　　Defendants. | Civil Action No. 03-12219-DPW |
| ALANA L. CURRY, et al., individually and on<br>behalf of all others similarly situated,<br>　　　Plaintiffs,<br><br>v.<br><br>FAIRBANKS CAPITAL CORP.,<br>　　　Defendant. | Civil Action No. 03-10895-DPW |

## OBJECTION TO CLASS ACTION SETTLEMENT
## OF STEPHEN WEINSTEIN AND NOTICE OF INTENTION TO APPEAR

NOW COMES class member Stephen Weinstein, 426 27th Street, West Palm Beach, FL 33407, telephone number 561-835-0506, and objects to the proposed settlement of this class action. Mr. Weinstein intends to appear and argue at the fairness hearing scheduled for May 12, 2004 through his undersigned counsel.

### I. There Is An Unaddressed Intraclass Conflict That Works To The Detriment Of The Foreclosure Class.

It is apparent on the face of the settlement notice that there is an unaddressed intraclass conflict that infects the proposed settlement and requires reversal. The settlement divides the relief into two separate funds: a $35 million redress fund to compensate class members for late fees and default-related fees, and a $5 million redress fund to compensate class members for damages caused by improper foreclosure by Fairbanks. It should be readily apparent that the damages caused to class members as a

result of Fairbanks' wrongful foreclosure are several hundred times as great as the damages caused to class members who only paid improper late fees and other fees. Yet the settlement allocates only 12.5% of the settlement fund to the foreclosure victims.

Stephen Weinstein is a member of the foreclosure subclass. His property was sold by Fairbanks at foreclosure sale on January 25, 2002 for less than fair market value, causing Mr. Weinstein to forfeit his $50,000 equity in the property. Today, the property is worth $60,000 to $80,000 more than it was worth in January 2002, capital appreciation that would have been realized by Mr. Weinstein had the property not been improperly foreclosed upon. Therefore, Mr. Weinstein's foreclosure-related damages are $110,000 to $130,000. See Affidavit of Stephen Weinstein filed herewith.

Prior to the foreclosure, Fairbanks imposed upon Mr. Weinstein's account a completely unsubstantiated charge of $10,000 for attorney's fees related to Mr. Weinstein's alleged default, and applied his loan payments to that improper charge instead of to reduce interest and principal amounts.[1] Due in part to this unwarranted and improper misapplication of funds paid by Mr. Weinstein to Fairbanks, Mr. Weinstein had no choice but to default on his mortgage and allow the property to go to foreclosure sale. Id.

This case presents the kind of overbroad settlement class definition disapproved in Amchem Prods. v. Windsor, 521 U.S. 591 (1997). Like the settlement class that combined exposure-only claimants and presently injured persons in Amchem, the settlement class here combines adverse parties with serious intraclass conflicts.

---

[1] This charge is not reflected on Mr. Weinstein's claim form for late fees and default-related charges. See claim form attached hereto as Exhibit A.

2

Foreclosure victims like Mr. Weinstein have damages that total in the hundreds of thousands of dollars, while late-fee and default-related-fee victims have damages generally less than $5000. The proposed settlement purports to settle the claims of both subclasses, and arbitrarily allocates only one-eighth of the settlement fund to the foreclosure subclass. There is no indication that the foreclosure subclass received adequate separate representation, or indeed that any of the lead plaintiffs lost their homes to foreclosure. This failure to formally certify subclasses and provide separate subclass representation requires reversal. Ortiz v. Fibreboard Corp., 527 U.S. 815, 857 (1999). "Nor does it answer the settlement's failures to provide structural protections in the service of equity to argue that certified class members' common interest in securing contested insurance funds for the payment of claims was so weighty as to diminish the deficiencies beneath recognition here." Id.

This intraclass conflict has clearly worked to the detriment of the foreclosure subclass. Assuming that Mr. Weinstein's damages are representative, and that most foreclosure victims suffered damages of $100,000 on average, the $5 million fund is sufficient to satisfy the claims of only 50 foreclosure subclass claimants. This is woefully inadequate. At the very least, the settlement fund should be split evenly between the two subclasses. The current arbitrary allocation favors the Late Fee/Default Related Fee subclass, and penalizes the foreclosure subclass, a direct result of the failure to certify separate subclasses with adequate representation.

This Court should deny approval of the proposed settlement, appoint Steven Weinstein as representative plaintiff for the foreclosure subclass, appoint attorney John Pentz as class counsel for the foreclosure subclass, and order the parties to renegotiate the allocation of the $40 million fund between the late-fee and foreclosure subclasses.

## II. The Calculation Of Class Members' Damages Undertaken By Coopers & Lybrand Is Demonstrably Flawed.

Mr. Weinstein understands that Coopers & Lybrand reviewed Fairbanks' records and calculated the amount of damages suffered by each class member. This amount was presumably used to arrive at the figure that appears on each claim form mailed to class members. For example, Mr. Weinstein's Late Fee/Default Related Fee Claim Form states incorrectly that "Fairbanks has charged you $1,891.42 for late fees and certain other default-related fees." This is clearly wrong, because, as noted above, Mr. Weinstein was charged $10,000 for attorney's fees related to "collection." This charge is apparently not reflected on Fairbanks' records. Presumably, similar charges to other class members are not reflected on Fairbanks' records. This calls the entire Coopers & Lybrand analysis into question, and renders the damage estimates that appear on the claim forms unreliable. This Court should deny approval to the settlement until a remedial damage analysis is done, and until an answer is provided as to why improper attorney's fee charges are not reflected on Fairbanks' records.

## III. The Requested Attorney's Fees Of $8.25 Million Are Improper Unless Based Upon Class Counsel's Lodestar.

The parties have not simply created a common fund and left it to the court to rule on the amount of a reasonable attorney's fee. Instead, they have pre-carved out $8.25 million from the class' recovery and earmarked it solely for the class' attorneys. This means that if the court awards less than the requested amount, the difference reverts to the defendant, rather than to the class. The Ninth Circuit has recently

clarified that this is improper.[2] The parties must either agree to establish a common fund out of which attorney's fees will be paid, with any remainder going to the class, or they may settle the amount of attorney's fees for an amount that is no more than class counsel's lodestar. They may not follow the hybrid methodology used here, by which the parties segregate out part of the fund solely for the compensation of the attorneys, thus depriving the class of a large portion of their funds even before the court has had an opportunity to rule on the reasonableness of fees.

This action was brought for violations of the Fair Debt Collection Practices Act. Therefore, attorney's fees must be based upon a lodestar analysis, as they would be if the plaintiffs were successful at trial and won a judgment against the Defendants. Class counsel certainly may not receive more in fees for a mediocre settlement than they could if they prevailed at trial, but that is precisely what they have asked for here.

The Ninth Circuit recently held that it is improper for a defendant to pay a fee to class counsel that is based upon a percentage-of-the-fund analysis unless the settlement actually creates a fund, and the attorney's fees are paid directly out of that fund. Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003). While the proposed settlement does create a fund, the requested attorney's fees will not come out of that fund, but instead will be paid out of a separate $8.25 million cash fund established solely for the compensation of class counsel. This is impermissible, as it preemptively deprives the class of as much as 20% of the total settlement's value before a court has had an opportunity to consider an appropriate attorney's fee award.

---

[2] The First Circuit does not have a different rule. Rather, it has yet to directly confront the precise set of facts presented here. If and when it does, objector Weinstein is confident that its application of established precedent will lead it to the same outcome as the Ninth Circuit.

5

The only basis for an award of attorney's fees to class counsel is class counsel's lodestar. While a defendant may agree to settle its obligation for attorney's fees along with the merits of the case, a defendant may not agree to pay class counsel *more* in settlement that it would be liable for if class counsel won the case after trial. That is exactly what happened here.

In <u>Evans v. Jeff D.</u>, 475 U.S. 717 (1986), the Supreme Court held that the parties to a class action settlement may negotiate the amount of the attorney's fees along with the substantive merits of a settlement. "The concerns motivating the decision in <u>Evans</u> – that prohibiting simultaneous negotiations and agreements as to merits and fees will discourage settlements – simply does not exist, however, in a case, such as this one, in which the parties to the negotiations seek to justify attorneys' fees as coming from a putative fund and to apply common fund principles." <u>Staton</u>, 327 F.3d at 971.

> Usually, an agreement that provides lawyers fees on a common fund basis constitutes a 'lump-sum' agreement, one that enables defendants to know the precise extent of their liability regardless of the amount of attorney's fees eventually awarded from the fund. Thus, the parties *could* have simply agreed upon the total amount of the putative fund, as well as the damages and the injunctive relief, and left the division of that fund as between the class and counsel to the district court, as is usual in common fund cases. Requiring the parties to so proceed, or, in the alternative, **to agree to a fee award as part of the settlement agreement in an amount no higher than could be justified by statutory fee-shifting principles,** fully serves the defendant's only legitimate interest in class counsel's fee award.

<u>Id.</u>

In a class action that, like this one, involves claims made under fee-shifting statutes, and that settles for a putative "common fund,"

> the parties may negotiate and settle the amount of statutory fees along

6

with the merits of the case, as permitted by Evans. In the course of
judicial review, the amount of such attorney's fees can be approved if
they meet the reasonableness standard when measured against statutory
fee principles. Alternatively, the parties may negotiate and agree to the
value of a common fund (which will ordinarily include an amount
representing an estimated hypothetical award of statutory fees) and
provide that, subsequently, class counsel will apply to the court for an
award from the fund, using common fund fee principles. In those
circumstances, the agreement as a whole does not stand or fall on the
amount of fees. Instead, after the court determines the reasonable
amount of attorney's fees, all the remaining value of the fund belongs
to the class rather than reverting to the defendant.

Id. at 972. The parties in this case did not follow the latter procedure. Therefore, the only basis for an attorney's fee award is the statutory fee principles found in the Fair Debt Collection Practices Act, pursuant to which this lawsuit was brought. The only "reasonable" fee under fee-shifting principles is class counsel's lodestar. Maywalt v. Parker & Parsley Petroleum Co., 864 F. Supp. 1422, 1435-36 (S.D.N.Y. 1994)(lodestar multipliers are not permissible in fee-shifting cases, even when such cases are settled and fees are sought out of common fund). If class counsel wished to request a fee based upon a percentage of the fund basis, the parties should have established a cash fund in the amount of $48.25 million, and class counsel then could have petitioned the court for an award of a reasonable percentage of that total fund.

Objector Weinstein does not yet know the basis of class counsel's fee and expense request of $8.25 million. Perhaps class counsel will claim a lodestar of that amount. If, however, class counsel seek to justify their fee request on a percentage of the fund basis, they may not do so based upon the holding of <u>Staton v. Boeing Co.</u>, 327 F.3d 938 (9th Cir. 2003). Objector Weinstein reserves the right to file further comments regarding class counsel's fee request once the request and any supporting documentation are filed.

Dated: April 6, 2004

Stephen Weinstein,
By His Attorney,

John J. Pentz, Esq.
736 Boston Post Road
Sudbury, MA 01776
(978) 440-9828

EXHIBIT A

**USA v. Fairbanks Capital Corp.**

Alanna L. Curry, et al. v. Fairbanks Capital Corp.
Claims Administration Center, c/o Gilardi & Co. LLC
P.O. Box 808054, Petaluma, CA 94975-8054

## CLAIM FORM – LATE FEES/DEFAULT RELATED FEES

**Please Do Not Use Red Ink, Pencil or Staples**

FTCFBK-16816691-7

008126

STEVEN WEINSTEIN
425 27TH ST
WEST PALM BCH FL 33407-5459

Claim No.: 16816591
Fairbanks has charged you $1,891.42
for late fees and certain other
default-related fees

As described in the Notice of Proposed Class Action Settlement, you are eligible to receive a settlement payment that will refund some of the late fees and other default-related fees you paid in connection with your mortgage loan(s) serviced by Fairbanks on or after January 1, 1999. As the Notice explains, the court has not yet given final approval to the settlement; if the court does not approve the settlement, there will be no refunds issued.

The amount shown above is the total amount of late fees and other default-related fees Fairbanks has charged you in this time period, less the amount of any refunds of those fees. Not all of these fees were illegal, but the lawsuits alleged that some of the fees were illegal. For example, Fairbanks allegedly charged late fees even when borrowers made their mortgage payments on time, or charged duplicative or unnecessary default-related fees. Your settlement payment will be a portion of the total amount Fairbanks has charged you. The amount you will receive will depend on the number of claim forms submitted and will reflect a percentage of the amount you paid.

To receive a settlement payment, you and any co-borrowers on the loan(s) must sign this form below. **In addition, you must return this form to the Claims Administration Center at the above address, postmarked no later than April 24, 2004.** A return envelope is enclosed for your convenience.

By signing below, you and any co-borrowers on your loan(s) affirm that you believe that some of the late fees or other default-related fees that Fairbanks charged you were improper, and that you would like to receive a settlement payment. As consideration for a settlement payment, you and any co-borrowers on your loan(s) agree to release Fairbanks and related entities from all claims with respect to the servicing of your loan(s) through December 10, 2003, as set forth in the Settlement Agreement in the *Curry* action.

**IMPORTANT: You and all co-borrowers on the loan(s) must sign here to make a claim.**

_____
(Signed)

_____
(Signed)

If your address is different from what appears above, please write any changes in the boxes provided below:

Address

City                                State    Zip Code

If you have any questions regarding the claims process, please call Gilardi toll-free at 800-377-1287, or visit its website at www.gilardi.com/fairbanks.

**IMPORTANT INFORMATION ON THE OTHER SIDE OF THIS DOCUMENT.**

# CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on April 7, 2004 he served a true copy of the foregoing document by first class mail on each of the counsel listed below.

Gary Klein, Esq.
Grant Klein & Roddy
727 Atlantic Avenue, 2d floor
Boston, MA 02111

Kelly Dermody, Esq.
Lieff Cabraser Heimann & Bernstein LLP
275 Battery Street, 30th floor
San Francisco, CA 94111

Thomas Hefferon, Esq.
Goodwin Procter LLP
Suite 500
1717 Pennsylvania Avenue, N.W.
Washington, DC 20006

Niall P. McCarthy, Esq.
Cotchett Pitre Simon & McCarthy LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
San Francisco, CA 94010

Daniel Mulligan, Esq.
Jenkins & Mulligan
660 Market Street, 3rd floor
San Francisco, CA 94104

Lucy E. Morris, Esq.
Division of Financial Practices
Bureau of Consumer Protection
Federal Trade Commission
600 Pennsylvania Avenue, NW, Mail Drop NJ-3158
Washington, DC 20580

_____
John J. Pentz